UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION
CASE NO. 7:20-CR-015-CHB-01

UNITED STATES OF AMERICA                                              PLAINTIFF

V.

WESLEY GLENN MARTIN                                                  DEFENDANT

_____

**DEFENDANT'S SENTENCING MEMORANDUM**
_____

## I.    UNRESOLVED OBJECTIONS OF THE DEFENDANT

**I.A.  The proper base offense level for the Defendant is either 14, 20, or 22.**

        **The proper base offense level for the Defendant is 14.**

The Defendant did not possess a firearm that meets the definition of a firearm contained at 26 U.S.C. 5845(a) because the sawed-off shotgun in this case was an unserviceable firearm. "The term 'unserviceable firearm' means a firearm which is incapable of discharging a shot by means of an explosive and incapable of being <u>readily</u> restored to a firing condition." 26 U.S.C. 5845(h) (emphasis added). The word "readily" as used in 26 U.S.C. 5845(h) should be interpreted to mean "promptly; quickly; easily"[1] or "without much difficulty."[2] The sawed off shotgun broke apart "into two different pieces" as soon as authorities picked it up, rendering it unfireable at the time it

---

[1] <u>Readily</u>, Dictionary.com; https://www.dictionary.com/browse/readily (December 21, 2021).

[2] <u>Readily</u>, Merriam-Webster Online Dictionary. https://www.merriam-webster.com/dictionary/readily (December 21, 2021).

was in Mr. Martin's possession. (Defendant's Sentencing Exhibits, p. 1).[3] There is nothing in the discovery file which suggests that the sawed-off could be repaired quickly and easily and with the tools at the disposal of Mr. Martin.

The distinction between a firearm under 26 U.S.C. 5845(a) and an unserviceable firearm at sentencing is far from meaningless. Defendants who possess unserviceable firearms as a prohibited person pose far less danger to the public than a prohibited person who possesses a firearm readily able to fire deadly propellants.

Accordingly, the Defendant's base offense level is 14, as he merely possessed an unserviceable firearm as a prohibited person. U.S.S.G. 2K2.1(a)(6).

**Alternatively, the proper base offense level for the Defendant would be 20.**

Even if the sawed-off shotgun meets the definition of a firearm under 26 U.S.C. 5845(a), the Defendant does not have two prior crimes of violence.

Under Kentucky law,

(1) A person is guilty of assault in the second degree when:

(a) He intentionally causes serious physical injury to another person; or
(b) He intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument; or
(c) He *wantonly* causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.

(2) Assault in the second degree is a Class C felony.

KRS 508.020.

Kentucky law defines "wantonly" as follows:

---

[3] In the interest of candor, the shotgun was successfully test fired several months later. (See attached KSP Crime Lab Report 03524-8). However, it is not clear from the KSP Crime Lab what repairs were made to the firearm to restore it to one piece. It is also important to note that the sawed-off shotgun was not tested using the shot contained in it at the time it was in Mr. Martin's possession.

> A person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto.

KRS 501.020(3).

This definition would not encompass "purposeful" conduct for the purposes of bringing an offense under the definition of a violent offense. *See Begay v. United States*, 553 U.S. 137 (2008). The Kentucky *mens rea* of "knowingly" is more closely related to the traditional "purposeful" of the generic crimes listed under the definition of a violent offense than "wantonly." "A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of that nature or that the circumstance exists." KRS 501.020(2).

Accordingly, Assault in the Second Degree is a divisible offense.

Arson in the Third Degree also does not meet the definition of a crime of violence. That crime only has a *mens rea* of wantonness.

> (1) A person is guilty of arson in the third degree if he *wantonly* causes destruction or damage to a building of his own or of another by intentionally starting a fire or causing an explosion.
>
> (2) In any prosecution under this section, it is a defense that no person other than the defendant had a possessory or proprietary interest in the building, or, if other persons had such an interest, all of them consented to defendant's conduct.
>
> (3) Arson in the third degree is a Class D felony.

KRS 513.040 (emphasis added).

Obviously the conduct described in Arson in the Third Degree does not meet the definition of "generic arson" and cannot be considered a prior conviction for a crime of violence even though

"arson" is an enumerated offense. *See United States v. Saunders*, 436 F.Supp 3d 595, 597-98 (E.D.N.Y. 2020) (citing *Begay v. United States*, 553 U.S. 137 (2008)); *See also United States v. McMurray*, 653 F.3d 367, 371 (6th Cir. 2011); *United States v. Gibbs*, 626 F.3d 344, 352 (6th Cir. 2010) (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)).

With no prior crimes of violence, the Defendant's conviction for possessing a sawed-off shotgun meeting the definition of a firearm under 26 U.S.C. 5845(a) would fall under the base offense level contained at U.S.S.G. 2K2.1(a)(4)(B).

**Alternatively, the highest proper base offense level for the Defendant is 22.**

Even if the sawed-off shotgun meets the definition of a firearm under 26 U.S.C. 5845(a) and even if Assault in the Second Degree in Knott Circuit Court Case No. 11-CR-00052 is counted as a crime of violence, his conviction for Arson in the Third Degree in Knott Circuit Court Case No. 10-CR-00066 should not be considered a crime of violence because Arson in the Third Degree has a *mens rea* of wantonness. The Defendant hereby incorporates by reference all of his arguments made above with respect to Arson in the Third Degree.

With only one prior crime of violence, the Defendant's conviction for possessing a sawed-off shotgun meeting the definition of a firearm under 26 U.S.C. 5845(a) would fall under the base offense level contained at U.S.S.G. 2K2.1(a)(3).

**I.B. The Defendant's crime did not involve a "destructive device" and should not be construed**

The sawed off shotgun involved in this case does not meet the definition of "destructive device" contained in the plain text of 26 U.S.C. 5845(f). This case is distinguishable from prior precedent establishing that 26 U.S.C. 5845(f) is broad enough to encompass a sawed off shotgun. The sawed off shotgun recovered from Mr. Martin's property was not a firearm "which <u>will</u>, or which may be <u>readily converted to</u>, expel a projectile by the action of an explosive or other

propellant[.]" 26 U.S.C. 5845(f)(2) (emphasis added). The sawed-off shotgun was, as argued above, an unserviceable firearm. 26 U.S.C. 5845(h). The sawed-off shotgun broke apart as soon as authorities picked it up, rendering it totally unfireable. (Defendant's Sentencing Exhibits, p. 1). The sawed off shotgun was therefore incapable of "expel[ling] a projectile (lead pellets) by means of an explosive or other propellant (gunpowder)." *United States v. Wynn*, 365 F.3d 546, 551 (6th Cir. 2004). By definition, it is not a destructive device. 26 U.S.C. 5845(f), (h).

Therefore, the two (2) point enhancement for possession of a destructive device does not apply to Mr. Martin.

**I.C. The Defendant's correct criminal history category is a III.**

The Defendant's charges in Knott Circuit Court Case Nos. 10-CR-00066 and 11-CR-00052 should be counted as one sentence because they ran concurrently as one state court sentence. The Defendant was arrested for the underlying charges in Knott District Court Case No. 10-F-00038 on May 27, 2010, but he was not indicted within sixty days so the case was dismissed. (Defendant's Hearing Exhibits pp. 16-17). The Defendant was arrested for his arrest warrant upon indictment in Case No. 10-CR-00066 at the same time he was arrested on the charges in 11-CR-00052 in Knott District Court Case No. 11-F-00037. (*Id*. at 18-20). Subsequently, the Defendant was served his warrant for the indictment in 11-CR-00052 while already in jail. (*Id*. at 18). The Defendant takes the position that this renders the cases to be appropriately counted together for criminal history category purposes as there was not truly an intervening arrest but only one arrest on the indictments at the time that the Defendant was in jail. If the cases are counted together for one unit of three (3), then the Defendant's total criminal history score is a 6, making him a Criminal History Category of III.

**I.D. The amended PSR's proposed sentencing guideline range is incorrect.**

The correct guideline range for the Defendant under a criminal history category of III is either: (1) 12-18 months, reflecting a base offense level of 14 and three (3) point reduction for acceptance of responsibility; 30-37 months, reflecting a base offense level of 20 and three (3) point reduction for acceptance of responsibility; 37-46 months, reflecting a base offense level of 22 and three (3) point reduction for acceptance of responsibility.

The correct guideline range for the Defendant under a criminal history category of IV is either: (1) 18-24 months, reflecting a base offense level of 14 and three (3) point reduction for acceptance of responsibility; or, alternatively, 37-46 months, reflecting a base offense level of 20 and three (3) point reduction for acceptance of responsibility; or, alternatively, 46-57 months, reflecting a base offense level of 22 and three (3) point reduction for acceptance of responsibility.

**I.E. The Defendant is indigent and cannot afford and should not be imposed a fine.**

The Defendant's only source of income is social security disability. Upon his incarceration, he will stop receiving those payments. Therefore, he is indigent and should not be given a fine as he is completely unable to pay it.

## II. DEFENDANT'S WITNESS LIST

The Defendant may call the following persons as witnesses at his sentencing hearing:

1. Marcella Martin, Mr. Martin's neighbor and relative who can speak to the Defendant's kind and charitable character. Ms. Martin will testify that the Defendant cares for his community and frequently provided a place to stay for homeless and wandering persons. Her testimony is expected to take between 10-15 minutes of the Court's time.

2. The Defendant reserves the right to supplement if new witnesses are discovered.

## III. NOTICE THAT THE DEFENDANT BELIEVES THE HEARING MAY EXCEED FORTY-FIVE (45) MINUTES

The Defendant respectfully provides notice that he anticipates the hearing will take longer than forty-five minutes due to the number of objections and potential witnesses.

RESPECTFULLY SUBMITTED,

/s/Ned Pillersdorf
Ned Pillersdorf
Attorney at Law
Pillersdorf Law Office
124 West Court Street
Prestonsburg, KY 41653
606-886-6090
606-886-6148
pillersn@gmail.com

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served upon Hon. Nick Rabold, counsel for the United States, and a copy e-filed using the Court's electronic filing system on this the 7th day of February, 2022.

/s/Ned Pillersdorf
Ned Pillersdorf